[Civ. No. 4394.  First Appellate District, Division One.—March 9, 1923.]

## AL G. BARNES SHOWS COMPANY (a Corporation), Appellant, v. TOYO KISEN KAISHA ORIENTAL STEAMSHIP COMPANY et al., Defendants; STEWART TAIT, Respondent.

[1] CLAIM AND DELIVERY—COUNTERCLAIM—OVERRULING OF DEMURRER—EVIDENCE—FINDING.—In an action of claim and delivery, error of the trial court in overruling plaintiff's demurrer to the counterclaim of the defendant for the return of the property, and for damages, does not constitute reversible error where, upon the trial of the case, no evidence is permitted under the counterclaim, and the findings recite that no finding is made with respect to the counterclaim because the court refused to receive any evidence whatsoever with reference thereto.

[2] ID.—OWNERSHIP OF ANIMALS—EVIDENCE.—In this action of claim and delivery involving the ownership of certain wild animals, undisputed evidence having shown that, as to a part of the animals, they were purchased by defendant for the purpose of bringing them to the United States and selling them as his own property, and as to the remainder of the animals, undisputed evidence having shown that they were paid for by defendant, and the evidence as to whose account they were purchased for having been conflicting, the finding against plaintiff as to the ownership of the animals was fully supported.

[3] ID.—POSSESSION OF ANIMALS—JUDGMENT.—In this action of claim and delivery against a steamship company and an individual, involving the ownership of certain wild animals, the court having found that the real possession of the animals was that of the individual defendant, with but a qualified possession in the steamship company, the return of the animals to the individual defendant was proper regardless of the disclaimer of the steamship company in the proceedings.

[4] ID.—ALTERNATIVE JUDGMENT.—A judgment for defendant for a return of property, or for its value where return cannot be had, is a proper judgment in replevin.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George A. Sturtevant, Judge. Affirmed.

The facts are stated in the opinion of the court.

Wm. M. Abbott, Wm. M. Cannon, Kingsley Cannon and Enid Childs for Appellant.

McCutchen, Olney, Willard, Mannon & Greene for Respondent.

ST. SURE, J.—This action was brought by Al G. Barnes Shows Company, a corporation, against the Toyo Kisen Kaisha Oriental Steamship Company, D. W. Callahan and Stewart Tait, for three elephants, one tiger, twenty-five monkeys, one dog, and one king cobra snake, then in possession of the steamship company. Defendants Callahan and Tait were joined as defendants because they claimed an interest in the animals. All of the animals were delivered to plaintiff under claim and delivery proceedings, and used in its circus. Defendant Callahan did not answer, the Steamship Company filed a disclaimer, and defendant Stewart Tait filed an answer and counterclaim and later a supplemental answer, which was amended. His answers denied all the allegations of plaintiff's complaint. In his counterclaim he set up ownership in himself of the elephants and monkeys, and asked for their restoration, or, if that were impossible, for $5,175, their reasonable value; also for $5,000 exemplary damages, and for costs of suit. The supplemental answer alleges the withholding and use by plaintiff of the animals since seizure, and the death, since the commencement of the suit, of all of them but one elephant. After demurrer to the answer and counterclaim had been overruled, the case went to trial on the complaint, answer, and amended supplemental answer. No evidence was permitted under the counterclaim. Judgment was for defendant Tait for $2,620.11, the value of two elephants and twenty-five monkeys, and for the return of the surviving elephant or $1,122.55, its value, with interest from the commencement of the action and costs of suit. Plaintiff's motion for a new trial was denied and it appealed from the judgment.

The evidence shows that in 1915 D. W. Callahan and Al G. Barnes Shows Company entered into a contract under which Callahan went to the Philippines for the purpose of bringing out Igorrotes, and with the further object of securing freaks or wild animals at the direction of the Shows Company. Callahan was supplied with $350 and a round-trip ticket to Manila. The Shows Company made advances to the Steamship Company to cover the return fare of ten Igorrotes that Callahan contemplated securing and bringing back to the United States. He arrived at Manila about January 20, 1916, and remained in the Philippines until about the 1st of April, endeavoring to find the Igorrotes for his employer, but without success. Callahan collected from the Steamship Company about $500, being the advances made for the fares of the savages to the United States. At this time he was conducting cable negotiations for two tigers and an elephant he had heard were to be had at Singapore. He also cabled to the Shows Company and received some $900 to pay for these animals. A few days before he was to leave for Singapore he had a talk with defendant Tait, whom he had met on a previous trip to Manila and who had lived there eight years. Tait intended visiting the United States, and Callahan suggested that there was good money to be made in buying wild animals, and that if Tait wished to accompany him he would show him what to buy and the prices to be paid, provided he might have the first option for Mr. Barnes of the Shows Company on all animals bought by Tait. Mr. Barnes, Callahan said, would purchase the animals immediately on their arrival in San Francisco. Tait agreed to go with Callahan, and they left Manila for Singapore. At Hongkong Callahan notified the steamship agent, Mr. Sheppard, that he would have an elephant and two tigers for shipment, and the latter said he would get in communication with Mr. Barnes and arrange the transportation. While at Hongkong Callahan, learning that the elephant he hoped to get at Singapore had been sold, decided to go to Saigon in an effort to replace it. He and Tait went to Saigon and thence inland to Phnom Penh, in Cambodia. There they heard of an elephant owned by the royal family. An audience was had with the king. After much haggling in four languages, carried on through interpreters, an elephant was purchased

for $375.   There is a direct conflict in the testimony as to
the purchase of this elephant, Callahan insisting that he was
buying it for Barnes, and Tait just as strongly claiming
that he bought it for himself.   It is undisputed, however,
that on leaving for Singapore the next day Callahan asked
Tait to pay for the elephant and see that it was transported
to Hongkong, where they intended to embark for the United
States.   Tait paid for the elephant and took a bill of sale
for it in his own name.   He also arranged for its care and
for its shipment to Saigon and thence to Hongkong.   After
Callahan's departure Tait purchased and paid for two ele-
phants, bought from another prince, took bills of sale for
both in his own name, and on these, as on the first, paid
export duties from Phnom Penh to Saigon and again at
Saigon for Hongkong.   He arranged with Mr. Sheppard for
transportation of the elephants to the United States, not
knowing at the time that the freight had been guaranteed
by the Shows Company.   Here, a few days later, he was
joined by Callahan, who brought a tiger and some forty
monkeys.   With some difficulty additional space was ar-
ranged for to take these animals on the same boat, and
Tait's testimony is that he made arrangements for transpor-
tation of these also prior to knowledge of any freight
guaranty by the Shows Company, though he did know of it
before they sailed.   Callahan's story is that together they
visited the various offices and that before sailing Barnes of
the Shows Company had guaranteed the freight, but that on
account of his sickness during part of this time he does not
know whether the final consent to take all the animals was
given to both or to Tait alone.   Callahan was sick on the
voyage so that supervision of the care of the animals and
reconstruction of their shelter on the deck of the boat fell
to Tait.   On arrival in San Francisco a Mr. Hill, repre-
sentative of the Shows Company, met the boat and talked
with Tait about the animals, Tait telling him that he
would hold the animals for the Shows Company until the
next day at prices which he then quoted him of $1,500 each
for two of the three elephants, and on the third (the first
one bought) the actual cost to him, and $15 apiece for the
twenty-five monkeys.   Hill stated that he would wire Mr.
Barnes of the Shows Company and let Tait know the next
day.   Plaintiff then instituted claim and delivery proceed-

ings and the animals were delivered to it. The trial court found Tait to be the owner of the three elephants and twenty-five monkeys to the exclusion of any claims of plaintiff as to ownership, right of possession, or damages claimed as money spent in pursuit of the animals. The court also found the value of each of the elephants to be $1,122.55, and the value of the monkeys as $15 each. The findings as to value are not questioned.

Plaintiff makes seven contentions on appeal. [1] The first of these is that the trial court erred in overruling plaintiff's demurrer to the counterclaim of defendant Tait praying the return of the animals in question to him, and seeking exemplary damages occasioned by his delay in San Francisco, due to the litigation. There is no merit in this contention. Although the court overruled plaintiff's demurrer to the counterclaim, it refused to permit any evidence to be introduced under it, and upon the subject made the following statement in the findings of fact: "That this court makes no findings whatsoever with respect to the counterclaim set forth by said defendant Stewart Tait in the answer filed by him in this action for the reason that this court refused to receive any evidence whatsoever with reference thereto." This statement is supported by the consistent rulings of the trial judge sustaining plaintiff's objections to every question put to defendant Tait by his attorney in an attempt to prove the allegations of damage in the counterclaim.

[2] The second contention is that the trial court committed error in finding against the plaintiff on the ownership of the animals. The undisputed evidence is that defendant Tait bought two elephants for the purpose of taking them to the United States and selling them as his own property. Defendant Callahan, the Shows Company representative, admits this. As to the third elephant, the evidence shows, as we have heretofore pointed out, a conflict in this: Tait insisted that he bought the animal for himself, while Callahan claimed it was bought for the Shows Company, but in this connection is the undisputed illuminating fact that Tait paid for the elephant, took a bill of sale for it in his own name, arranged for care and transportation and paid duty upon it. As to the ownership of the twenty-five monkeys, defendant Tait testified that he furnished Calla-

han money with which to purchase these animals, and in this regard he is corroborated by Callahan himself. A reading of the entire record convinces us that there is abundant evidence to support the findings of the trial court. And in the instance where a conflict appears as to the ownership of one elephant the finding of the trial court cannot be disturbed by us under a rule so ancient and familiar that citation of authority is unnecessary. The contention that, as Callahan was the representative of the Shows Company, the question of agency enters into the case, that there was a joint venture between Tait and Callahan and that under the·principle enunciated in section 1985 of the Civil Code, everything acquired by an employee by virtue of his employment, except his compensation, belongs to his employer, is of no force whatever. There was no fraud practiced upon the Shows Company. The arrangement between Tait and Callahan, as the evidence shows, was in every way a proper one.

The findings of the court upon the question of ownership disposes of the third contention of plaintiff's cotenancy; the fourth, claiming an adventurer's lien; and the fifth, urging that the relief granted Tait was improper because the steamship company filed a disclaimer.

[3] The sixth contention is without merit. The return of the animals to Tait was proper regardless of the disclaimer of the steamship company in the proceedings, since the court found that the real possession was that of Tait, with but a qualified possession in the Steamship Company.

[4] The seventh contention that error was committed in giving alternative judgment for the value of the animals falls with the sixth. A judgment for defendant for a return of property, or for its value where return cannot be had, is a proper judgment in replevin.

The judgment is affirmed.

Tyler, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 7, 1923.